**Joseph and Mildred LOWDER, Appellants,**

v.

**UNITED STATES of America, Appellee.**

**No. 87–1452.**

United States Court of Appeals, Eighth Circuit.

Submitted Sept. 4, 1987.

Decided Oct. 20, 1987.

Charles T. Traw, Iowa City, Iowa, for appellants.

Christopher D. Hagen, Asst. U.S. Atty., Des Moines, Iowa, for appellee.

Before LAY, Chief Judge, FLOYD R. GIBSON, Senior Circuit Judge, and MAGILL, Circuit Judge.

FLOYD R. GIBSON, Senior Circuit Judge.

Joseph and Mildred Lowder appeal the district court's [1] judgment in favor of the United States in this medical malpractice action brought under the Federal Tort Claims Act, 28 U.S.C. §§ 1346(b) and 2671. For the reasons stated below we affirm.

## I. BACKGROUND

On August 25, 1958, Joseph Lowder fell approximately twenty feet from a roof while working at the Rock Island Arsenal. Lowder was bedridden for several months with a fractured vertebra at the L–1 level. Although his physicians told him that he would never walk again, approximately seven months after the accident Lowder was again able to walk. Neurological

---

1. The Honorable Ronald E. Longstaff, United States Magistrate for the Southern District of   Iowa, acting as the trial court upon stipulation of the parties pursuant to 28 U.S.C. § 636(c).

problems resulting from the accident caused Lowder to walk in a wide-based gait and affected his bladder control. Nevertheless, in August 1959 he began working as a heavy equipment operator, and continued through 1969.

In April 1969 Lowder began experiencing pain on the left side of his body. He was treated by a physician, an osteopath, and a chiropractor, but the symptoms persisted. In 1970 Lowder was hospitalized twice in the Veterans Administration Hospital in Iowa City, Iowa. During the first hospitalization a myelogram was performed revealing a complete block at the L–1 level. Lowder's diagnosis was possible multiple sclerosis or polyneuropathy. Complications developed and Lowder lost the ability to toe-walk. During his second hospitalization the principal diagnosis was probable multiple sclerosis. Lowder was once again hospitalized on March 8, 1972. After discharge he was examined by the Neurological Department of the V.A. hospital every six months for the following seven years. During this time Lowder continued working as a heavy construction equipment operator.

In March 1979 Lowder was readmitted to neurology for reevaluation. Two myelograms were performed and a blockage was found at the T–12, L–1 level. Lowder was diagnosed as suffering from a syringomyelia—a fluid filled cavity in the spinal cord at the level of the blockage. Upon admittance it was noted that Lowder was experiencing no change in muscle strength or bowel or bladder functions, but he was experiencing great pain and loss of control in his shoulders and arms.

After reviewing Lowder's records, Dr. Dennis McDonnell, the Chief of Staff of Neurology, and Dr. Venna Uberoi, then a third year neurosurgery resident, concluded that surgery was necessary to drain from Lowder's spine a cyst which was pressing on his spinal cord. The procedure involved inserting a plastic tube into the spinal cavity and draining the tube into the peritoneal cavity of Lowder's abdomen.

On March 30, 1979 the surgery was performed with unsuccessful results. Lowder is no longer able to walk unaided and he has lost all bladder and bowel control. The district court classified Lowder as 100 percent disabled.

Lowder brought suit in the United States District Court for the Southern District of Iowa alleging medical malpractice. Specifically, Lowder alleged that his condition was worsened by the unnecessary surgery and that it was performed without his informed consent. Mildred Lowder also brought suit for loss of consortium. The district court found that Dr. McDonnell's recommendation that surgery be performed was reasonable under the circumstances and that Lowder was given all the information necessary for an informed consent. On appeal Lowder challenges the district court's finding on informed consent.

## II. DISCUSSION

In *Cowman v. Hornaday,* 329 N.W.2d 422 (Iowa 1983), the Iowa Supreme Court adopted the "patient rule" for measuring a physician's duty to disclose information to a patient. The court stated that a physician must communicate information which, based on the patient's needs, is material to the decision whether to undergo treatment. *Id.* at 425. This rule applies to both elective and non-elective surgery. *Pauscher v. Iowa Methodist Medical Center,* 408 N.W.2d 355, 359 (Iowa 1987).

"Materiality" is defined as "the significance a reasonable person, in what the physician knows or should know is his patient's position, would attach to the disclosed risk or risks in deciding whether to submit or not to submit to surgery or treatment." 329 N.W.2d at 425 (quoting *Wilkinson v. Vesey,* 110 R.I. 606, 295 A.2d 676, 689 (1972)). Lowder, of course, bears the burden of establishing that his physicians failed to disclose all material information. 408 N.W.2d at 360.

The district court found that Dr. McDonnell discussed the procedure with Lowder on two occasions prior to surgery. Lowder was told that past problems could not be corrected, but that his present condition could be stabilized and further deteriora-

tion prevented. Lowder was told of the dangers of the surgery and that his condition could be worsened.

The court found that on March 29, 1979 Lowder executed the following consent form:

The nature and purpose of the operational procedure, possible alternative methods of treatment, the risks involved, and the possibility of complications have been fully explained to me. I acknowledge that no guarantees have been made to me concerning the results of the operational procedure. I understand the nature to the operational procedure to be....

In the blank provided on the form Dr. Uberoi described the procedure as removing laminae T-10 through L-1 vertabrae and shunting the fluid in the cavity to the abdomen. Lowder did not indicate to Dr. McDonnell or Dr. Uberoi that he did not understand the procedure or that he had any hesitation in having the surgery. The court concluded that Lowder was given all the information necessary for him to make a decision.

The main thrust of Lowder's argument on appeal is that his physicians failed to discuss with him the chances of success or failure and the alternatives to surgery. A reasonable person in Lowder's position would not have consented to surgery had he known of the inherent risks, Lowder argues.

Lowder argues that in 1979 he did not believe his symptoms interfered with his ability to work. He only checked into the V.A. hospital to have his diagnosis reevaluated. At the time he believed that the surgery would relieve the pain he felt in his arms. Lowder argues that his physicians should have known that his condition was stable from 1972 through 1979. Further, Lowder argues that there is no evidence that he was told that Dr. McDonnell and Dr. Uberoi had never performed a syringomyelia. Also, he was not told that the surgery was uncommon and serious and that his condition might stabilize without surgery.

Lowder argues that given his physical condition, work history, and economic circumstances, he needed to know exactly that information which was not given to him. He would have weighed the risks against the gains and concluded that surgery was unwarranted.

We believe that Lowder is attempting, on appeal, to reargue facts which he failed to prove at trial. Throughout the trial the burden was on Lowder to prove the elements of his cause of action. The district court heard all the evidence and found that Lowder did not meet his burden. Unless the district court's findings of fact are clearly erroneous, they will be affirmed. *See Anderson v. City of Bessemer City,* 470 U.S. 564, 573, 105 S.Ct. 1504, 1511, 84 L.Ed.2d 518 (1985).

Dr. McDonnell testified that he explained to Lowder that his condition was progressive but could be helped by surgery. Also, Lowder was told that complications—including those which eventually occurred—could arise. Dr. Uberoi testified that it was Dr. McDonnell's standard practice to meet with his patients prior to surgery and discuss the procedure to be followed and the problems which could develop. Dr. Uberoi also stated that no promises regarding the outcome were made to Lowder.

We believe that there is sufficient evidence in the record for us to affirm the district court's factual findings. Lowder has failed to show how the district court was clearly erroneous. The United States, in its brief, points out that the record is inconclusive on many of the issues raised by Lowder. For example, McDonnell was never asked on direct or cross-examination whether he had experience with this type of surgery, whether Lowder's condition was rare or common, and the chances of success. It was entirely proper for the district court to infer that Lowder was given all the necessary information. The district court was able to observe the demeanor of the witnesses and determine the credibility to be given to each one. Absent a showing of clear error it is not our role to second guess the district court's factual determinations.

### III. CONCLUSION

Because we find that the district court's factual findings are not clearly erroneous, the judgment of the district court is affirmed.